## WILLIAMS v. SOUTHERN LIFE & HEALTH INS. CO.

### No. 11935.

Court of Civil Appeals of Texas. Galveston.

Feb. 5, 1948.

 

Gordon A. Dotson and E. T. Chew, both of Houston, for appellant.

Keilin & Pepper, of Houston, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellee, Southern Life and Health Insurance Company, for cancellation of a policy of insurance issued by it on the life of Bennie Williams, the husband of appellant, Annie Williams, who was named sole beneficiary in the policy.

Appellee alleged that it had issued an insurance policy on the life of Bennie Williams as a result of false and fraudulent statements made by Bennie Williams in his application for said insurance as to the condition of his health. That said insurance policy provided that no obligation would be assumed by the Company unless the insured was in sound health when the policy was issued, but that, at the time said representations were made and at the time of the delivery of the policy, he was suffering from a syphilitic heart disease, rheumatism and hypertension, and that these facts were well known to him and were made with a design to deceive appellee.

Appellant answered by general denial. By cross-action she sought recovery of the face amount of the policy with an attorney's fee and a 12% penalty.

A jury found, in substance, in answer to special issues submitted, that the representations made by Bennie Williams in his application for said insurance that he had never suffered from certain diseases were untrue, and that he knew they were untrue at the time they were made, but that they were not made to deceive the insurance company. They found that he was suffering from syphilis at that time and that he was not in sound health. Based on the answers to said special issues judgment was rendered cancelling the insurance policy and denying appellant the relief sought in her cross-action.

The policy of insurance under consideration was issued on the life of Bennie Williams on March 5, 1945. He died on September 1, 1945, of cardiac decompensation due to syphilitic heart disease. The policy

provided that: "No obligation is assumed by the Company prior to the date hereof, nor unless on delivery hereof the Insured is alive and in sound health and free from accidental injury. * * *"

Dr I. H. Schoss, a witness for appellee, testified that, in his opinion, the insured had had syphilis for a period of twenty years prior to his death. He testified that, in his opinion, it was not necessary to have a microscopic examination of the heart in order to determine whether a patient had cardiac decompensation, but that the fact he was suffering from this disease could be determined from a clinical examination.

Appellant predicates her appeal upon the alleged error of the trial court in not granting a new trial on the grounds of the newly discoverd evidence of Dr. A. Philo Howard, whose affidavit was attached to appellant's motion for a new trial, in which he stated, in substance, that it would have been impossible to tell that Bennie Williams died of cardiac decompensation unless a microscopic test of deceased's heart was made, or a post mortem was had.

Appellant alleged in her motion for new trial that her attorneys were surprised at the testimony of Dr. Schoss and that, at the noon hour, prior to the submission of the case to the jury, one of her counsel, Mr. E. T. Chew, "tried in vain to reach Dr. A. Philo Howard to determine whether the testimony of Dr. Schoss was correct, and that after the jury came in with its verdict E. T. Chew learned from Dr. Howard what his testimony would be."

"Applications for new trials based on newly discovered evidence are received with careful scrutiny, and are held to address themselves very much to the discretion of the trial court; and where the court has refused an application made upon this ground, an appellate court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law." 31 Tex.Jur., P. 90, Sec. 81.

■ "When application is made for a new trial on the ground of newly discovered evidence, it is necessary that the applicant show that knowledge of the existence of the new evidence was acquired subsequent to the former trial, and that it was not owing to want of diligence that such evidence was not discovered and obtained in time to be used when the case was tried; that the new evidence is material, and not merely cumulative, and that, if admitted, it would probably change the result upon another trial. The burden is upon the movant to establish each of these facts, and, if he does so, a new trial should be awarded as a matter of right, and a refusal thereof constitutes reversible error." 31 Tex.Jur., P. 91, Sec. 81.

■ The granting or refusal of a new trial for newly discovered evidence rests within the sound discretion of the trial court, and unless such discretion has been abused the court's ruling will not be disturbed on appeal. McCall v. Texas Dragline Service Co., Tex.Civ.App., 188 S.W.2d 243; Snow v. Harding, Tex.Civ.App., 180 S.W.2d 965; Courreges v. System Freight Service, Tex.Civ.App., 152 S.W.2d 841; Blaugrund v. Gish, Tex.Civ.App., 179 S.W. 2d 257, affirmed 142 Tex. 379, 179 S.W.2d 266.

■ A lack of diligence precluding grant of a new trial is evidenced by the fact that the movant, prior to trial, knew of the existence of evidence material to his case but did not compel the attendance of witnesses or take their depositions. Thus a new trial will be denied if no effort was made to get in touch with material witnesses, or where an alleged newly discovered witness resides in the county and could have been found and summoned prior to the trial, or where a party charged with notice of the importance of a witness' testimony did not seek a continuance in order to obtain it. Nor is it a ground for a new trial that, for the first time, after trial, a party was informed that witnesses, of whose existence he was aware, were willing to testify in his favor. 31 Tex.Jur., P. 99 and 100, Sec. 86.

In the case of Allen et al. v. Texas & N. O. R. Co., Tex.Civ.App., 70 S.W.2d 758, it was held that the trial court, who had heard the whole trial, was necessary acquainted with all the facts of the case and in a better position than anyone else to pass upon such issues, and that the granting or refusing of a motion for new trial on the ground of

newly discovered evidence is generally regarded as a matter resting within his discretion, and that his action will not be disturbed except when such discretion is abused. Citing numerous cases.

In the case of Peterson v. Clay, Tex.Civ. App., 225 S.W. 1112, 1115, it was held that the appellants did not show sufficient diligence to procure the evidence referred to as newly discovered evidence, where the materiality of the evidence, and its existence, became known to the defendants before the close of the trial, and that they should have promptly asked for a continuance or a postponement in order to secure such evidence.

In the case of De Hoyos v. Galveston, H. & S. A. R. Co., 52 Tex.Civ.App. 543, 115 S.W. 75, 76, writ refused, the facts are almost identical with those in the instant case. In that case the Court said:

"Appellant therefore became informed during the trial of the fact that Norris probably knew something of this occurrence, and, if it really occurred as plaintiff claimed, the probability was that, if he knew anything about it, his testimony would be favorable to plaintiff. In these circumstances, plaintiff would not have been justified in going on and submitting the case to the jury, without having made some proper effort to have Norris as a witness, and afterwards, on finding that Norris' testimony was in fact favorable, to ask for a new trial. * * * If plaintiff really wanted Norris as a witness, or wanted a fair opportunity to locate him and to find out what he knew, he should, when it was apparent that he was not immediately to be found and the trial nearing the end, have endeavored to have the case postponed in some way in order to afford him a reasonable opportunity to do so. * * * As it is, appellant may be said to have wanted Norris as a witness at this trial and to have him there, if he could find him, but failing to do so, was nevertheless willing, with the testimony he had, to go on with the case and take a chance of a favorable verdict. We think there was no error in refusing the new trial."

In this case it is undisputed that, prior to the trial of the case, appellant's attorney knew the cause of Bennie Williams' death from an investigation of the records of Jefferson Davis Hospital. He had been told by a physician in that institution that it would be impossible to determine that a patient had died of cardiac decompensation unless a microscopic test of the heart or a post mortem was made. Counsel for appellant interrogated Dr. Schoss on cross-examination in reference to these facts, but on the trial of the case did not offer medical testimony of any kind, did not ask the court for time to obtain additional testimony, and did not apply for a postponement of the trial for that purpose.

Under this record we do not think that the trial court abused his discretion in refusing appellant's motion for new trial on the grounds of newly discovered evidence.

The judgment of the trial court is in all things affirmed.