COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-118-CV
JAMES EMANUEL FRENCH                                                                
APPELLANT
V.
DEBORAH LYNN FRENCH                                                                    
APPELLEE
------------
FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
------------
MEMORANDUM OPINION(1)
------------
In eleven issues, Appellant James Emanuel
French complains about the trial court's division of the community estate upon
his divorce from Appellee Deborah Lynn French, and in two issues, he complains
about the trial court's denial of his motion for new trial. Because we hold that
the trial court did not err and that the evidence is sufficient to support the
trial court's findings, we affirm the trial court's judgment.
Factual Background
James and Deborah were married on or about
October 13, 1989 and separated on or about January 16, 2001. They had twin sons
who were fourteen years old at the time of the separation. After a bench trial,
the trial court granted the divorce and entered a final divorce decree naming
the parties as joint managing conservators, giving Deborah the exclusive right
to determine the children's residence subject to the agreed geographic
restriction, and ordering a possession schedule that gave James more time with
the twins than a standard possession order would have. Neither party appeals
from any orders concerning the children; this appeal stems solely from the
division of the community estate. The trial court awarded James the following
community property:

 (1) all household assets in his
 possession or subject to his control;
 (2) all of his clothing, jewelry, and
 personal effects;
 (3) all funds in his sole name or
 subject to his sole control;
 (4) all life insurance policies insuring
 his life;
 (5) all stocks, bonds, and securities
 registered in his name, including dividends, stock splits, and other connected
 privileges;
 (6) the 1996 Dodge Ram; and
 (7) French Drainfields, Inc.

The trial court awarded Deborah the
following community property:

 (1) the family home;
 (2) all household assets in her
 possession or subject to her control;
 (3) all of her clothing, jewelry, and
 personal effects;
 (4) all funds in her sole name or
 subject to her sole control;
 (5) all retirement funds due to her own
 employment;
 (6) all union benefits;
 (7) all individual retirement accounts,
 annuities, and variable life insurance benefits in her name;
 (8) all life insurance policies insuring
 her life;
 (9) all stocks, bonds, and securities
 registered in her name, plus dividends, stock splits, and other connected
 privileges; and
 (10) the 1999 Chevrolet Suburban.

Additionally, Deborah's attorney held
$11,019.94 in his IOLTA account at the time of divorce, but the judge ordered
that the couple's capital gains tax be paid out of the fund and that both
parties' attorneys then be paid "the balance in equal amounts." The
trial court found that the capital gains tax owed was approximately $2,200.00.
The evidence at trial showed that the parties' unpaid attorney's fees, at almost
$15,000.00 before any post-decree proceedings, exceeded the amount in the IOLTA
account.
James was ordered to pay the note on the
Dodge pickup, any debts he had incurred since the separation, and all taxes on
the property awarded to him in the decree. Deborah was ordered to pay the
mortgage on the house, the note on the Suburban, all debts she had incurred
since the separation, and all taxes on the property awarded to her in the
decree.
In his motion for new trial, James
complained that the trial court's division of the marital estate was not
"just and right." Specifically, he stated that the court gave Deborah
135.06% of the community estate and gave him negative 35.06%, even though she
did not plead for a disproportionate share of the estate. He also complained
that the court failed to consider her "community interest in her day-care
business." Inexplicably, he also stated that he had "a meritorious
defense to the cause of action alleged in this case." The trial court
denied the motion for new trial.
In findings of fact and conclusions of law
entered on the day that the motion for new trial was denied, the trial court
found:

 6. The property of both parties acquired
 by gift, inheritance, or before the marriage of the parties consists only of
 personal items having insignificant value.
 7. During the marriage Petitioner and
 Respondent acquired the following property other than by gift or inheritance
 with the values shown:
 
 1. Single family residence at 8424
 Bernard, Sanger, Texas having a net equity of $58,000.00.
 2. An incorporated business known as
 French Drainfields, Inc. having a net value of $40,000.00, exclusive of
 "good will".
 3. An interest in a lot in Krum, Texas
 having a value of $20,000.00.
 4. An interest in a portable building
 having a value of $5,000.00.
 5. A 1999 Chevrolet Suburban having a
 negative value of $1,000.00.
 . . . .
 7. Miscellaneous household furniture
 in the possession of Petitioner having a value of $3,500.00.
 8. Miscellaneous household furniture
 in the possession of Respondent having a value of $4,500.00.
 9. College St. Child Care &
 Learning Center, Inc. in Decatur, Texas is owned by Respondent's parents and
 Respondent does not own any interest in that business.
 10. There is no cash surrender value
 life insurance.
 11. All of the parties['] assets and
 liabilities are set forth in the Divorce Decree.
 12. At the time of trial neither party
 had cash or monies in accounts exceeding a total of $1,000.00.
 13. The 2001 real property taxes
 assessed against [the house] were unpaid at time of trial and amounted to
 $2,673.00.
 14. Petitioner's unsecured debts not
 related to French Drainfields, Inc. or Federal Income Tax at time of trial
 [were] less than an aggregate of $3,000.00.
 14[a]. Respondent's unsecured debts
 not related to French Drainfields, Inc. or Federal Income Tax at time of
 trial [were] $3,120.00 in credit cards, $4,855.00 in medical bills, and
 $7,500.00 to her parents.
 15. Respondent's attorney of record
 holds in trust $11,019.94 of the parties['] money. The parties owe capital
 gains tax of approximately $2,200.00.
 

The trial court also entered a conclusion of law that the property division
was "just and right."
Legal Analysis
The House and French Drainfields, Inc.
In three issues, James challenges the
trial court's findings of the net equity of the family residence (issue four);
the market value of the family business, French Drainfields, Inc. (issue five);
and the market value of a lot in Krum in which French Drainfields, Inc. had an
interest (issue six). James contends that the trial court's findings of the
values of these three assets are against the great weight and preponderance of
the evidence.
Findings of fact entered in a case tried
to the court have the same force and dignity as a jury's answers to jury
questions. (2) Findings of fact are the exclusive
province of the trier of fact. (3) A court of
appeals cannot make findings of fact; it can only "unfind" facts.
(4) Unchallenged findings of fact are binding unless the contrary is
established as a matter of law or there is no evidence to support the findings.
(5) The trial court's findings of fact are reviewable for legal and
factual sufficiency of the evidence to support them by the same standards that
are applied in reviewing evidence supporting a jury's answer.
(6)
In reviewing an issue asserting that a
finding is "against the great weight and preponderance" of the
evidence, we must consider and weigh all of the evidence, both the evidence that
tends to prove the existence of a vital fact as well as evidence that tends to
disprove its existence. (7) So considering the
evidence, if a finding is so contrary to the great weight and preponderance of
the evidence as to be manifestly unjust, the issue should be sustained,
regardless of whether there is some evidence to support it.
(8) We do not have to give details of supporting evidence when
upholding factual sufficiency of the evidence underlying the trial court's
judgment. (9)
A trial court is required to divide the
community estate in a just and right manner. (10)
The values of individual items "are evidentiary to the ultimate issue of
whether the trial court divided the properties in a just and right manner."
(11) The parties bear the burden of providing the trial court with a
basis for the division. (12) The party
complaining of the trial court's division must demonstrate from evidence in the
record that the division was so unjust that the trial court abused its
discretion. (13)
Evidence at trial showed that the balance
remaining due on the home mortgage was about $108,000 and that the market value
of the home was anywhere from $150,000 to $210,000. The trial court's finding
that the net equity in the house was
$58,000 was not against the great weight and preponderance of the evidence. We
overrule issue four.
Similarly, evidence at trial showed that
the business was worth anywhere from negative $10,000 to $115,000. The trial
court's finding that the business was worth $40,000 exclusive of good will was
not against the great weight and preponderance of the evidence. We overrule
issue five.
Additionally, the evidence showed that the
interest in the lot in Krum was worth anywhere from $8,700 to $50,000. The trial
court's finding that the interest in the lot in Krum was worth $20,000 was not
against the great weight and preponderance of the evidence. We overrule issue
six.
College St. Child
Care & Learning Center, Inc.
In issues seven through nine, James
complains that the trial court's finding that Deborah did not own any part of
the daycare business was against the great weight and preponderance of the
evidence and that the trial court erred in failing to divide her interest in the
daycare business, and, presumably alternatively, in failing to reimburse the
community for her work in the daycare business. While a government document
containing Deborah's signature as "assistant director as co-owner" was
admitted into evidence, Deborah testified at trial that she had lied on that
document. She testified that her parents, who owned the business, had wanted to
give her part of the business but had not done so because of her husband. Her
father testified that Deborah did not own any of the business but that he had
planned to give her the business sometime later in life. There was also evidence
that Deborah drew an annual salary from the business as an employee. Finally, in
his direct testimony, James initially omitted the daycare from the list of
marital assets that he considered valuable, naming only the house and French
Drainfields, Inc. The court's finding that Deborah did not own any of the
daycare business was thus not against the great weight and preponderance of the
evidence.
Additionally, because Deborah did not own
any part of the business, the court properly did not consider it in dividing the
community estate and properly did not award reimbursement to the community for
the time Deborah spent on her job. We overrule issues seven, eight, and nine.
Deborah's
Post-Separation Debts
In his tenth issue, James contends that
the trial court's consideration in the division of the community estate of
medical expenses and a personal loan Deborah got from her parents after the date
of separation was against the great weight and preponderance of the evidence and
a clear abuse of discretion. He does not challenge the values assigned the
debts. Instead, he argues that the debts were Deborah's sole and separate
property. James misstates both the burden of proof and the law.
Debts contracted during the marriage are
presumed to be community unless it is shown that the creditor agreed to look
solely to the separate estate of the contracting spouse for payment of the debt.
(14) The party seeking to overcome the presumption must do so by clear
and convincing evidence. (15)
Evidence showed that the unsecured debts
incurred by Deborah after separation but before the divorce included medical
bills and a personal loan from her parents for medical expenses, attorney's
fees, and living expenses. The trial court awarded the debts to Deborah in the
divorce decree. James does not cite evidence, nor do we find any, that the
creditors agreed to look solely to Deborah's separate estate for payment. James
has not overcome the presumption that the debts were community debts. The trial
court thus did not err or abuse its discretion by including the debts in the
community estate. We overrule issue ten.
In his eleventh issue, James contends that
the trial court erred in finding that Deborah's gifts were of insignificant
value. He argues that the $7,500 loan from Deborah's parents was a gift. No
evidence supports his contention. The evidence supports the trial court's
treatment of the $7,500 as a loan. We overrule issue eleven.
Division of the
Community Estate and Denial of the Motion for New Trial
In issues one through three, James
complains that the trial court erred by not dividing the estate in a "just
and right" manner and that the trial court awarded Deborah a
"disproportionate share of the community estate" when neither the
pleadings nor the evidence supported an inequitable division.
A trial court is charged with dividing the
community estate in a "just and right" manner, considering the rights
of both parties. (16) If there is any reasonable
basis for doing so, we must presume that the trial court exercised its
discretion properly. (17) We will not disturb
the trial court's division unless the record demonstrates "that the
division was clearly the result of an abuse of discretion."
(18) That is, we will not reverse the case unless the record clearly
shows that the trial court was acting arbitrarily or unreasonably.
(19) The complaining party has the burden of proving from the record
that the division was so unjust that the trial court abused its discretion.
(20)
The record shows that James was awarded
miscellaneous furniture in his possession, valued at $3,500; French Drainfields,
Inc., valued at $40,000, exclusive of good will; and up to $1,000 in cash and
bank accounts. Unsecured debts awarded to James totaled less than $3,000. The
net value awarded to James was thus about $41,500 plus the 1996 Dodge truck.
The record also shows that Deborah was
awarded the house, valued at $58,000, the 1999 Chevy suburban, valued at
negative $1,000, miscellaneous furniture valued at $4,500, and up to $1,000 in
cash and bank accounts. Her debts included real property taxes of $2,673, credit
card debt of $3,120, medical bills of $4,855, and the personal loan of $7,500.
The net value awarded to Deborah was thus about $44,350. Both parties also owed
attorney's fees because the total attorney's fees were estimated to exceed the
amount in Deborah's attorney's IOLTA fund.
We have already upheld all challenged
findings. Based on the law and the facts, we hold that Deborah was not awarded a
disproportionate share of the estate and that the trial court did divide the
community estate in a "just and right" manner. Consequently, the trial
court did not abuse its discretion in dividing the community estate. We
therefore overrule issues one, two, and three.
In his twelfth issue, James complains that
the trial court erred by denying his motion for new trial "because the
division of the community estate was not just and right." We have already
held that the trial court's division of the community estate was "just and
right." We overrule issue twelve.
In his final issue, James contends that the trial court erred by denying his
motion for new trial because James "had a meritorious defense to the cause
of action alleged in the case." James petitioned for divorce. Deborah
answered and counterpetitioned for divorce. Both parties appeared and
participated in trial with their attorneys. We see no merit in this issue. Even
if it had merit, "Appellant's mere recitation that he has a meritorious
defense to the cause of action alleged and that the trial court erred in
granting the divorce does not sufficiently specify the grounds for Appellant's
complaint under rule 33.1(a)." (21) We
overrule issue thirteen.
Conclusion
Having overruled all of James's issues, we
affirm the trial court's judgment.
PER CURIAM
PANEL F: DAUPHINOT, LIVINGSTON, and
HOLMAN, JJ.
[DELIVERED JANUARY 9, 2003]

1. See Tex. R. App. P. 47.4.
2. Anderson v. City of Seven Points, 806 S.W.2d
791, 794 (Tex. 1991).
3. Bellefonte Underwriters Ins. Co. v. Brown, 704
S.W.2d 742, 744 (Tex. 1986).
4. Tex. Nat'l Bank v. Karnes, 717 S.W.2d 901, 903
(Tex. 1986).
5. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986); Reliance Ins. Co. v. Denton Cent. Appraisal Dist., 999
S.W.2d 626, 629 (Tex. App.--Fort Worth 1999, no pet.).
6. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).
7. Ames v. Ames, 776 S.W.2d 154, 158-59 (Tex.
1989), cert. denied, 494 U.S. 1080 (1990); Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).
8. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d
815, 816 (1959); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661
(1951).
9. Ellis County State Bank v. Keever, 888 S.W.2d
790, 794 (Tex. 1994).
10. Tex. Fam. Code Ann. § 7.001 (Vernon 1998).
11. Finch v. Finch, 825 S.W.2d 218, 221
(Tex. App.--Houston [1st Dist.] 1992, no writ); see Wallace v. Wallace,
623 S.W.2d 723, 725 (Tex. Civ. App.--Houston [1st Dist.] 1981, writ dism'd).
12. Finch, 825 S.W.2d at 221; Wallace,
623 S.W.2d at 725.
13. Pletcher v. Goetz, 9 S.W.3d 442, 446 (Tex.
App.--Fort Worth 1999, pet. denied).
14. Cockerham v. Cockerham, 527 S.W.2d 162, 171
(Tex. 1975); Sprick v. Sprick, 25 S.W.3d 7, 13 (Tex. App.--El Paso
1999, pet. filed); Morris v. Morris, 894 S.W.2d 859, 863 (Tex.
App.--Fort Worth 1995, no writ).
15. Sprick, 25 S.W.3d at 13; see Tex.
Fam. Code Ann. § 3.003(b) (Vernon 1998).
16. Tex. Fam. Code Ann. § 7.001.
17. Pletcher,
9 S.W.3d at 446.
18. Id.
19. See Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).
20. Pletcher, 9 S.W.3d at 446.
21. Guyot v. Guyot, 3 S.W.3d 243, 248 (Tex.
App.--Fort Worth 1999, no pet.); see Tex. R. App. P. 33.1(a).